# Exhibit 1

# Petition

IN THE DISTRICT COURT OF CARTER COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| DALE MCVAY<br><br>Plaintiff,<br><br>vs<br><br>ARDMORE POLICE DEPARTMENT,<br>CITY OF ARDMORE, ex rel.<br>OFFICER JARED TAYLOR, in his official capacity;<br>OFFICER JARRED JOHNSON, in his official capacity;<br><br>Defendant. | Case No. CJ-2025-316<br><br>FILED<br>IN DISTRICT COURT<br><br>DEC 18 2025<br>RENEE BRYANT, Court Clerk<br>Carter County, Oklahoma |

**PETITION**

COMES NOW, Dale McVay, by and through his attorneys of record, Brandon Pieson and Alan M. Taylor of Palmer Law, PLC and for his causes of action against the Defendants, whose actions resulted in mental anguish, alleges and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Dale McVay is and was at all relevant times herein, a resident of Garland County, State of Texas.
2. Defendant City of Ardmore is a political subdivision of the State of Oklahoma.
3. Defendant Ardmore Police Department is a police department in Ardmore, Carter County, Oklahoma.
4. Defendant Officer Jared Taylor ("Defendant Taylor") was, at all times relevant to this Petition, duly appointed, employed, and acting within the scope of his employment as an Ardmore Police Department. Officer Taylor is being sued in his official capacity.

5. Defendant Officer Jarred Johnson ("Defendant Johnson") was, at all times relevant to this Petition, duly appointed, employed, and acting within the scope of his employment as an Ardmore Police Department as a K-9 handler. Officer Johnson is being sued in his official capacity.
6. The instant action arises under the Fourth, Fifth Amendments to the United States Constitution and under Title 42 of the United States Code, Sections 1983 and 1988.
7. The events stated herein occurred within the confines of Carter County, State of Oklahoma, making jurisdiction and venue proper in this Honorable Court.
8. Though the factual background and claims are itemized in separate sections, this Petition should be read as a whole, each segment incorporating all others.
9. Plaintiff brings this Petition against the Defendants under 51 O.S. § 156, the Governmental Tort Claims Act with a certified Letter sent and signed for with a postal stamp on the return receipt of March 19, 2025. See Exhibits 1 – 4.

## STATEMENT OF FACTS

10. Plaintiff incorporates the preceding paragraphs as if realleged, as though fully set forth herein.
11. On or about October 2021, Officers from the Ardmore Police Department started using Automated License Plate Readers ("ALPRs").
12. Per 47 O.S. §7-606.1(C)(1), "Participating law enforcement agencies may use automatic license plate reader systems utilizing individual automatic license plate reader system units to access and collect data for the investigation, detections, analysis or enforcement of Oklahoma's Compulsory Insurance Law." (emphasis added).

13. On or about March 18, 2024, Defendant Johnson stopped Plaintiff for a traffic stop. Defendant Johnson stated to Plaintiff that "he passed over the fog line and wanted to make sure that he was not intoxicated."
14. Defendant Johnson took Plaintiff to his patrol car to "write a warning".
15. While Defendant Johnson had Plaintiff in his patrol car to write the warning, Defendant Johnson checked public records to see if Plaintiff had any outstanding warrants or legal issues in Oklahoma on the ODCR website.
16. After searching ODCR, Defendant Johnson pulled up the ALPR to see all the trips that had registered with the system, even though Plaintiff had provided Defendant Johnson with his insurance.
17. Defendant Johnson asked Plaintiff about coming to Oklahoma on March 10, January 20, or January 11 and asked if Plaintiff comes to Oklahoma often and why he comes to Oklahoma.
18. Then Defendant Johnson stated that if the Plaintiff was going to lie about not coming to Oklahoma often, then what else is he lying about.
19. Plaintiff stated to Defendant Johnson that Defendant Johnson was exceeding the limit of "brief" for the traffic stop and was told that Defendant Johnson was not exceeding the limit especially with the Plaintiff's increased nervousness.
20. Defendant Johnson asked Plaintiff if he was in Oklahoma doing anything illegal and Plaintiff stated, "no, he didn't cross the line". Defendant Johnson stated that he begged to differ.
21. Defendant Johnson began asking if there was anything illegal in the Plaintiff's vehicle due to Defendant Johnson stating that Plaintiff was getting more nervous with questions.

22. Plaintiff stated there was nothing illegal in the vehicle. After stating there was nothing illegal in the vehicle, Defendant Johnson began asking about marijuana, cocaine, heroin, methamphetamines, fentanyl pills, firearms, or large amounts of currency.

23. Defendant Johnson asked about searching Plaintiff's vehicle and Plaintiff said that would be an illegal stop. Defendant Johnson said it was not.

24. Defendant Johnson asked about running a dog around Plaintiff's vehicle and Plaintiff stated that he had a right to run a dog around the outside of the vehicle.

25. Defendant Johnson asked Plaintiff if he had his insurance on his phone and was told no, he always gets it mailed to him.

26. Defendant Johnson told Plaintiff that he had any small amount for personal use, Oklahoma is different than Texas and Plaintiff would be on his way. Plaintiff again stated he had nothing.

27. At 16:19:10 Defendant Johnson gave Plaintiff a warning for Plaintiff to sign.

28. At 16:19:23 Defendant Johnson gave Plaintiff the warning and told him if he needed something to roll down the window, but not to exit the vehicle. This should have been the end of the traffic stop.

29. There was no smell of marijuana from the vehicle nor anything in obvious sight. Defendant Johnson called for another officer to come to the stop.

30. Defendant Johnson stated to Defendant Taylor that an exhaust hanging low during the drive is what caught his attention while the two defendants searched the Plaintiff's vehicle.

31. After the Defendants had not found anything in Plaintiff's vehicle, Defendant Johnson made sure Plaintiff had his ID and let him go.

## CLAIMS FOR RELIEF

32. Plaintiff incorporates the preceding paragraphs as if realleged, as though fully set forth herein.

33. Each Defendant individually acted in a deliberate indifference to Plaintiff's State and Federally protected rights. The Defendants intentionally and/or recklessly caused Plaintiff distress, beyond which a reasonable person could be expected to endure.

34. Plaintiff is suing the individual Defendants for depriving him of his clearly established and well settled federal constitutional rights under the Fourth and Fifth Amendments to the United States Constitution including but not limited to:

   a. The right to be free from an unreasonable seizure of his person. The Defendant Johnson had completed the traffic stop when Defendant Johnson handed the Plaintiff the warning and it was not reasonable or appropriate to keep Plaintiff for a drug dog to sniff the vehicle when there was no evidence of criminal activity.

   b. The right to protect against self-incrimination and due process of law. Defendant Johnson continually asked Plaintiff if he had anything illegal. Plaintiff continually stated that he did not have anything illegal.

## UNREASONABLE SEARCH AND SEIZURE
## Oklahoma Constitution Section II-30

The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 34, as though fully set forth herein.

The above-described acts and omissions engaged in under color of law by defendants Ardmore Police Department, Defendant Johnson and Defendant Taylor, proximately caused, and or caused the deprivation of rights secured to plaintiff McVay by the Constitution and laws of the United States of America 42 U.S.C.§§ 1981, 1983, including but not limited to his Fourth Amendment right to be free from unlawful seizure of person.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory...or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress...

42 U.S.C. §1983.

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated." *Okla. Const.* § II-30, *U.S. Const. amend.* IV. Defendant Johnson stopped Plaintiff alleging that Mr. McVay had passed over the fog line.

Defendant Johnson had Plaintiff move to the Defendant's squad car and had Mr. McVay sit in the front seat where he began asking Mr. McVay questions while running legal searches for Mr. McVay. Defendant did not locate any criminal charges on Mr. McVay that were outstanding and issued Mr. McVay a warning. When Defendant Johnson handed Mr. McVay the warning, the traffic stop was at its natural end. "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. State of Ohio*, 392 U.S. 1, 88 S.Ct. 1898, 20 L.Ed.2d 889 (1968) (internal citation omitted).

Defendant Johnson questioned Plaintiff about his trip to Oklahoma and some previous day trips to Oklahoma. Plaintiff asked Defendant Johnson if he had a plate reader and Defendant Johnson said yes, and that was why he was asking about the trips. Per 47 O.S. §7-606.1(C)(1), "Participating law enforcement agencies may use automatic license plate reader systems utilizing individual automatic license plate reader system units to access and collect data for the investigation, detections, analysis or enforcement of <u>Oklahoma's Compulsory Insurance Law</u>." (emphasis added). The only legal reason that Defendant Johnson had to use the ALPR was to verify

that Mr. McVay had valid insurance. Once Defendant Johnson had verified that Mr. McVay had insurance, there was no statutory reason for Defendant Johnson to use the ALPR.

Defendant Johnson had no probable cause to hold Mr. McVay any longer nor did he have any probable cause from what he had seen of the vehicle or Mr. McVay's record, for him to do a search with a canine officer. However, Defendant Johnson called for another officer and had Mr. McVay stay in Defendant's cruiser while Defendant had his canine partner search the outside of Mr. McVay's vehicle. The K-9 officer allegedly alerted Mr. McVay's vehicle; however, the Defendants did not locate any drug paraphernalia, drug proceeds, or any other type of criminal element that would have been a reason for the stop.

WHEREFORE, the entire search of Mr. McVay's vehicle was a violation of his well-established rights as well as beyond the scope of the initial stop. As such, Mr. McVay prays that the Court finds in the favor of the Plaintiff and grants the relief requested.

## Monell Claims

> The ALPR technology, also known as License Plate Recognition (LPR), allows for the automated detection of license plates. It is used by the Ardmore Police Department to convert data associated with vehicle license plates for official law enforcement purposes, including identifying stolen or wanted vehicles, stolen license plates and missing persons. It may also by used to gather information related to active warrants, homeland security, electronic surveillance, suspect interdiction and stolen property recovery.

Ardmore Police Department Policy 424.3. See Exhibit 5. Ardmore Police Policy is in direct violation of 47 O.S. §7-606.1 which states that "Participating law enforcement agencies may use automatic license plate reader systems utilizing individual automatic license plate reader system units to access and collect data for the investigation, detection, analysis or enforcement of Oklahoma's Compulsory Insurance Law." See Exhibit 6. In 2024, Oklahoma Legislature had House Bill No. 3570 which would update the use of ADLRs. See Exhibit 7. However, the House

Bill did not pass. With the failure to pass House Bill No. 3570, Ardmore Police Department Policy 424 has no Oklahoma Statutory Authority for Officers to use the ALPRs for anything other than insurance verification. Furthermore, this policy is the driving force behind the actions of Defendant Johnson regarding Mr. McVay.

Under Monell, **the Plaintiff** can get damages when the political subdivision has a policy, custom, or practice that is unconstitutional, when a final policy maker made the decision for the unconstitutional act, or when the political subdivision has failed to train, supervise, or properly screen employees. Furthermore, even if **the Plaintiff** can show one of these, it still must be shown that it was the driving force behind the unconstitutional violation. However, if none of these are shown, but an individual has in fact violated **the Plaintiff's** rights, the political subdivision will not be liable for the actions of its employees—respondent superior liability does not exist in this context.

**WHEREFORE,** based on the above and foregoing, Dale McVay prays for a judgment in excess of $175,000.00 against these Defendants for actual, compensatory, and all applicable categories of damages, reasonable attorney's fees, costs of this action, for systematic change to the policy and for all other relied allowable under law.

Respectfully submitted,

Brandon Pierson, OBA #35432
Alan M. Taylor, OBA#34351
Palmer Law
5601 NW 72nd Street, Suite 324
Warr Acres, OK 73132
405-510-0911
405-885-0890
pierson@callpalmer.com
taylor@callpalmer.com
ATTORNEYS FOR PLAINTIFF

## VERIFICATION UNDER RULE 4(c)

STATE OF OKLAHOMA )
) ss.
COUNTY OF Oklahoma )

Pursuant to Rule 4(c) of the Rules for District Courts of Oklahoma, Brandon Pierson of Palmer Law PLC, attorney of record for Dale McVay, being first duly sworn upon oath, states the facts stated to counsel by Petitioner, Dale McVay, and other proof will show the fact issues raised herein, and will suffice until a hearing or stipulation can be provided.

Brandon Pierson, OBA #35432
ATTORNEY FOR PETITIONER

Subscribed and sworn to before me this 17 day of December, 2025.

TASHA DAWN PARKS
Notary Public State of Oklahoma
Commission # 22006218
My Commission Expires 05-03-2026

[SEAL]

Court Clerk / Notary Public

# PALMER LAW

YOUR OFFENSE ◆ YOUR DEFENSE ◆ YOUR TEAM

Lloyd B. Palmer, Esq.
(405) 496-1154
101 E. 13th St.
Ada, Oklahoma 74820
palmer@callpalmer.com

Kendra M. Blocker, Esq.
(580) 399-0509
101 E. 13th St.
Ada, Oklahoma 74820
kendra@callpalmer.com

Keenan P. Haught, Esq.
(405) 542-2529
1325 S. Broadway
Hinton, Oklahoma 73047
haught@callpalmer.com

Alan M. Taylor, Esq.
(405) 885-0890
101 E. 13th St.
Ada, Oklahoma 74820
taylor@callpalmer.com

Brandon Pierson, Esq.
(580)495-9633
5601 NW 72nd St., Ste 324
Warr Acres, OK 73132
Pierson@callpalmer.com

Eric D. Ranney, Esq.
(405)623-0703
5601 NW 72nd St, Ste 324
Warr Acres, OK 73132
Eric@callpalmer.com

Serving all of Oklahoma



March 12, 2025

David House, Chief of Police
Ardmore Police Department
23 S Washington St
Ardmore, OK 73401

Nancy Sjulin, Mayor/Commissioner
Kevin Boatright, City Manager
City of Ardmore Board of Commissioners
23 S Washington St
Ardmore, OK 73401

RE: Notice of Claim by Dale McVay under the Governmental Tort Claims Act

Greetings:

This is a notice of claim under the Governmental Tort Claims Act, 51 O.S.§ 151 *et. seq*. My law firm represents Dale McVay generally and with regard to the matter herein. Upon information and belief, he states as follows:

1. This claim involves the unlawful stop of my client which resulted in damages to my client.

2. Dale McVay is and was at all relevant times herein, a resident of Garland, Texas.

**Date, time, place and circumstances of the claim:**

3. On or about afternoon of March 18, 2024, my client, Dale McVay, was unlawfully pulled over and his vehicle searched by Officer Taylor and Officer Johnson of the Ardmore police, as Mr. McVay's vehicle was tagged for making a day trip from Texas to Oklahoma, resulting in the unlawful search and seizure of my client.

4. Officers Taylor and Johnson's wrongful acts and/or omissions were intentional and/or malicious.

5. The acts and/or omissions described herein above were in violation of Mr. McVay's Fourth Amendment right.

6. On or about the afternoon of March 18, 2025, Mr. McVay was traveling through Ardmore, Oklahoma and was tagged by the APLR that Ardmore Police Department was using. The use of the APLR is a violation of Mr. McVay's Fourth Amendment rights.

7. The use of APLR that was used on March 18, 2024, was being used in violation of state and federal law.

8. When Mr. McVay was subsequently stopped by Law Enforcement, it was an unlawful detention.

9. While Mr. McVay was subsequently being unlawfully detained, officers with canine units were called to search the vehicle without reasonable suspicion and in violation of his fourth amendment rights.

**Identity of the state agency or agencies involved:**

Ardmore Police Department

**Amount of compensation or other relief demanded:**

Therefore, Dale McVay demands $175,000.00 (or the maximum amount currently allowable under 51 O.S. §154, whichever is greater) as satisfaction of his claims and causes of action for injuries and damages, physical, mental, past, present and future as a result of this incident.

**Name, address, and telephone number of the claimant:**

Dale McVay can be contacted only through him attorneys of record, Alan M. Taylor or Brandon Pierson of Palmer Law PLC at the telephone number and address above.

**Name, address, and telephone number of agent authorized to settle the claims:**

Brandon Pierson or Alan M. Taylor of Palmer Law PLC at the telephone number and address above.

It is Dale McVay's intent to confidentially and timely claim just compensation to make himself whole and to avoid continued damages and prolonged litigation. To that end, this offer will expire pursuant to the statutory approval time period of ninety (90) days. Immediately thereafter, this claim will be deemed denied and a suit will be filed.

Please notify this office of your response to this claim at your earliest convenience. If you have any questions or comments, please feel free to contact me. Thank you very much for your assistance.

Faithfully,

Brandon Pierson, Esq.

cc: client

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

David Houst
Ardmore Police Dept
23 S Washington St
Ardmore, OK 73401-7036

9590 9402 8102 2349 5296 63

2. Article Number (*Transfer from service label*)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X [signature] ☐ Agent ☐ Addressee

B. Received by (*Printed Name*) C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

USPS TRACKING #

Y OK 730

M 6 L

9590 9402 8102 2349 5296 63

United States
Postal Service

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

[redacted]

Palmer Law
101 E 13th Street
Ada, OK 74820
USA

McVey

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Nancy Sjulin, mayor /commissioner
Kevin Beatright, city manager
City of Ardmore, Board of Commissioners
23 S Washington St
Ardmore, OK 73401

9590 9402 8102 2349 5297 24

2. Article Number *(Transfer from service label)*

7022 3330 0000 0383 1410

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X [signature] ☐ Agent ☐ Addressee

B. Received by *(Printed Name)* C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

USPS TRACKING #

CITY OK 730

M 6 L

9590 9402 8102 2349 5297 24

United States
Postal Service

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Palmer Law
101 E 13th Street
Ada, OK 74820
USA

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Nancy Sjulin, Mayor/Commissioner
Kevin Boatright, city manager
City of Ardmore Board of
Commissioners

9590 9402 8102 2349 5298 56

2. Article Number (*Transfer from service label*)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (*Printed Name*) C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

USPS TRACKING #

Y OK 730

M 6 L

9590 9402 8102 2349 5296 56

United States
Postal Service

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Palmer Law
101 E 13th Street
Ada, OK 74820
USA

mcvay

Policy
**424**

Ardmore Police Department
Ardmore Police Department Policy Manual

# Automated License Plate Readers (ALPRs)

## 424.1 PURPOSE AND SCOPE

The purpose of this policy is to provide guidance for the capture, storage and use of digital data obtained through the use of Automated License Plate Reader (ALPR) technology.

## 424.2 POLICY

The policy of the Ardmore Police Department is to utilize ALPR technology to capture and store digital license plate data and images while recognizing the established privacy rights of the public.

All data and images gathered by the ALPR are for the official use of this department. Because such data may contain confidential information, it is not open to public review.

## 424.3 ADMINISTRATION

The ALPR technology, also known as License Plate Recognition (LPR), allows for the automated detection of license plates. It is used by the Ardmore Police Department to convert data associated with vehicle license plates for official law enforcement purposes, including identifying stolen or wanted vehicles, stolen license plates and missing persons. It may also be used to gather information related to active warrants, homeland security, electronic surveillance, suspect interdiction and stolen property recovery.

All installation and maintenance of ALPR equipment, as well as ALPR data retention and access, shall be managed by the Patrol Division Commander. The Patrol Division Commander will assign members under his/her command to administer the day-to-day operation of the ALPR equipment and data.

## 424.4 OPERATIONS

Use of an ALPR is restricted to the purposes outlined below. Department members shall not use, or allow others to use, the equipment or database records for any unauthorized purpose.

(a) An ALPR shall only be used for official law enforcement business.

(b) An ALPR may be used in conjunction with any routine patrol operation or criminal investigation. Reasonable suspicion or probable cause is not required before using an ALPR.

(c) While an ALPR may be used to canvass license plates around any crime scene, particular consideration should be given to using ALPR-equipped vehicles to canvass areas around homicides, shootings and other major incidents. Partial license plates reported during major crimes should be entered into the ALPR system in an attempt to identify suspect vehicles.

(d) No member of this department shall operate ALPR equipment or access ALPR data without first completing department-approved training.

Copyright Lexipol, LLC 2022/02/01, All Rights Reserved.
Published with permission by Ardmore Police Department

(e) No ALPR operator may access confidential department, state or federal data unless authorized to do so.

(f) If practicable, the officer should verify an ALPR response through the appropriate official law enforcement database before taking enforcement action that is based solely on an ALPR alert.

(g) ALPR may be used in conjunction with the Uninsured Vehicle Enforcement Program upon approval of the Chief of Police and in accordance with 47 O.S. § 7-606.1.

### 424.5 DATA COLLECTION AND RETENTION

The Patrol Division Commander is responsible for ensuring systems and processes are in place for the proper collection and retention of ALPR data. Data will be transferred from vehicles to the designated storage in accordance with department procedures.

All stored ALPR data should be retained in accordance with the established records retention schedule. Thereafter, ALPR data should be purged unless it has become, or it is reasonable to believe it will become, evidence in a criminal or civil action or is subject to a discovery request or other lawful action to produce records. In those circumstances, the applicable data should be downloaded onto portable media and booked into evidence.

### 424.6 ACCOUNTABILITY

All data will be closely safeguarded and protected by both procedural and technological means. The Ardmore Police Department will observe the following safeguards regarding access to and use of stored data:

(a) All ALPR data downloaded to the mobile workstation and in storage shall be accessible only through a login/password-protected system capable of documenting all access of information by name, date and time.

(b) Members approved to access ALPR data under these guidelines are permitted to access the data for legitimate law enforcement purposes only, such as when the data relate to a specific criminal investigation or department-related civil or administrative action.

(c) ALPR system audits should be conducted on a regular basis.

### 424.7 RELEASING ALPR DATA

The ALPR data may be shared only with other law enforcement or prosecutorial agencies for official law enforcement purposes or as otherwise permitted by law, using the following procedures:

(a) The agency makes a written request for the ALPR data that includes:

1. The name of the agency.
2. The name of the person requesting.

Copyright Lexipol, LLC 2022/02/01, All Rights Reserved.
Published with permission by Ardmore Police Departme

3. The intended purpose of obtaining the information.

(b) The request is reviewed by the Patrol Division Commander or the authorized designee and approved before the request is fulfilled.

(c) The approved request is retained on file.

Requests for ALPR data by non-law enforcement or non-prosecutorial agencies will be processed as provided in the Records Maintenance and Release Policy.

### 424.7.1 UNINSURED VEHICLE ENFORCEMENT PROGRAM DATA

Information required for prosecutions may be released through sworn affidavits in conjunction with the Uninsured Vehicle Enforcement Program (47 O.S. § 7–606.1).

Data related solely to the Uninsured Vehicle Enforcement Program shall be retained as evidence of a violation of the Compulsory Insurance Law, but should be purged when no longer needed as evidence of the offense. Data related solely to the Uninsured Vehicle Enforcement Program shall not be sold or shared in manner that is not authorized by 47 O.S. § 7–606.1.

Copyright Lexipol, LLC 2022/02/01, All Rights Reserve
Published with permission by Ardmore Police Departm

OKLAHOMA
STATE
COURTS
NETWORK

Title 47. Motor Vehicles

# Oklahoma Statutes Citationized

## Title 47. Motor Vehicles

### Chapter 7 - Financial Responsibility

#### Article Article 6 - Compulsory Liability Insurance

#### Section 7-606.1 - Uninsured Vehicle Enforcement Program - Implementation - Automatic License Plate Reader System

Cite as: 47 O.S. § 7-606.1 (OSCN 2025)

---

A. There is hereby created the Uninsured Vehicle Enforcement Program.

B. The Uninsured Vehicle Enforcement Program shall be implemented and administered by the district attorneys of the State of Oklahoma within their respective districts or at the District Attorneys Council. To implement this program, the use of technology and software to aid in detection of offenses involving uninsured motorists is necessary and district attorneys and participating law enforcement agencies shall have the authority to enter into contractual agreements with automated license plate reader providers to provide necessary technology, equipment and maintenance thereof.

C. 1. Participating law enforcement agencies may use automatic license plate reader systems utilizing individual automatic license plate reader system units to access and collect data for the investigation, detection, analysis or enforcement of Oklahoma's Compulsory Insurance Law.

2. To accomplish the purposes of the program, law enforcement agencies shall be allowed to access the online verification system for motor vehicle liability policies to establish compliance with the Compulsory Insurance Law as provided in Section 7-600.2 of Title 47 of the Oklahoma Statutes.

3. Access to the system shall be restricted to authorized law enforcement agency users in the program; provided, any entity with which a contract is executed to provide necessary technology, equipment and maintenance for purposes of the program shall be authorized, as necessary, to collaborate for required updates and maintenance of their software.

4. Any data collected and stored by law enforcement pursuant to the program shall be considered evidence if noncompliance with the Compulsory Insurance Law is confirmed.

D. A law enforcement officer may verify by sworn affidavit that a photograph generated by an automatic license plate reader system unit identifies a particular vehicle operating on or having been operated on a public road, highway, street, turnpike, other public place or upon any private road, street, alley or lane which provides access to one or more single-family or multifamily dwellings and that the online verification system shows that the vehicle was uninsured at the time such vehicle was being operated. The affidavit shall constitute probable cause for prosecution under applicable state law.

E. Data collected or retained through the use of an automated license plate reader system pursuant to the program shall be retained by a law enforcement agency when the data is being used as evidence of a violation of the Compulsory Insurance Law; provided, when the data is no longer needed as evidence of a violation, the data shall be deleted or destroyed.

F. Data collected or retained through the use of an automated license plate reader system shall not be used by any individual or agency for purposes other than enforcement of the Compulsory Insurance Law or as otherwise permitted by law.

1. No law enforcement agency or other entity authorized to operate under this program shall sell captured license plate data for any purpose or share it for any purpose not expressly authorized by this section.

2. Any and all data collected, retained or shared through the use of an automated license plate reader system, except data retained as evidence of a violation of the Compulsory Insurance Law, shall be exempt from the Oklahoma Open Records Act.

G. The provisions of the program shall not apply to, or be construed or interpreted in a manner to prohibit the use of, any other automated license plate reader system by an individual or private legal entity for purposes not otherwise prohibited by law.

H. The provisions of the program shall not be implemented until such time that the Insurance Department verifies that the following conditions have been met:

1. At least Ninety-Five Percent (95%) of the personal lines auto insurance market in the state participates in the Oklahoma Compulsory Insurance Verification System using a real-time web portal system; and

2. The Oklahoma Compulsory Insurance Verification System is updated in such a way to allow for the provisions of the program to be implemented without interrupting or impeding any other lawful uses of the system.

I. Following the implementation of the program and every year thereafter, the District Attorneys Council shall publish an annual report for the previous fiscal year of the Uninsured Vehicle Enforcement Program by September 1. An electronic copy of the report shall be distributed to the President Pro Tempore of the Senate and the Speaker of the House of Representatives and the chairs of the House and Senate Appropriations Committees. The report shall comprise an evaluation of program operations, and may include any information and recommendations for improvement of the program deemed appropriate by the entity submitting the report.

J. For purposes of this section:

1. "Automatic license plate reader system" means a system of one or more mobile or law-enforcement-controlled cameras combined with computer algorithms to convert images of registration plates into computer-readable data;

2. "Law enforcement agency" includes the district attorney's office of any county, the Department of Public Safety, the sheriff's office of any county, and the chiefs of police of any city or town having a population of more than one hundred thousand (100,000) residents; and

3. "Program" means the Uninsured Vehicle Enforcement Program.

***Historical Data***

Laws 2016, SB 359, c. 365, § 1; Amended by Laws 2017, SB 115, c. 74, § 2, eff. November 1, 2017 (superseded document available).

***Citationizer© Summary of Documents Citing This Document***

*Cite* *Name Level*

*None Found.*

***Citationizer: Table of Authority***

*Cite Name* *Level*

***Title 47. Motor Vehicles***

| *Cite* | *Name* | *Level* |
|---|---|---|
| *47 O.S. 7-600.2,* | *Online Verification System for Motor Vehicle Insurance* | *Cited* |
| *47 O.S. 7-606.1,* | *Uninsured Vehicle Enforcement Program - Implementation - Automatic License Plate Reader System* | *Cited* |

# HOUSE OF REPRESENTATIVES - FLOOR VERSION

STATE OF OKLAHOMA

2nd Session of the 59th Legislature (2024)

COMMITTEE SUBSTITUTE
FOR
HOUSE BILL NO. 3570 By: Manger

COMMITTEE SUBSTITUTE

An Act relating to motor vehicles; defining terms; allowing the use of automatic license plate readers for certain purposes; disallowing certain uses; requiring law enforcement agencies take certain actions prior to use; stating certain match is not reasonable suspicion; requiring officer make certain visual confirmation; requiring certain information be purged; making certain exception; disallowing the sale of information; requiring certain information be made public; amending 69 O.S. 2021, Section 1208, as amended by Section 1, Chapter 335, O.S.L. 2023 (69 O.S. Supp. 2023, Section 1208), which relates to structures in rights-of-way prohibited; defining terms; allowing law enforcement placement of automatic license plate readers on highway rights-of-way; providing for codification; and providing an effective date.

BE IT ENACTED BY THE PEOPLE OF THE STATE OF OKLAHOMA:

SECTION 1. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 15-133 of Title 47, unless there is created a duplication in numbering, reads as follows:

A. As used in this section:

1. "Automatic license plate reader system" means a system of one or more fixed or mobile cameras combined with computer algorithms to convert images of license plates and vehicles into computer-readable data; and

2. "Highway rights-of-way" means the state and interstate highway systems being maintained by the Oklahoma Department of Transportation.

B. 1. Except as provided in Sections 7-606.1 and 7-606.2 of Title 47 of the Oklahoma Statutes, operation of and access to an automatic license plate reader system by law enforcement shall be for official law enforcement purposes only, and shall only be used to scan, detect, and identify vehicles and license plate numbers for the purpose of identifying:

a. stolen vehicles,

b. vehicles involved in an active investigation,

c. vehicles associated with wanted, missing, or endangered persons, or

d. vehicles that register as a match within the National Crime Information Center and any other relevant federal, state, or local databases.

Other than as provided in Section 7-606.1 and 7-606.2 of Title 47 of the Oklahoma Statutes, automatic license plate readers shall not be used to enforce state or local traffic violations or issue citations for such violations.

2. Prior to using an automatic license plate reader system, the municipal or state law enforcement agency that intends to use the technology shall:

a. confirm that the automatic license plate reader system meets all requirements of this section,

b. establish a policy governing its use in accordance with this section that includes a training process for the officers that will use it and an auditing schedule to ensure proper use, and

c. obtain a permit from the Department before installing an automatic license plate reader system on a state or interstate highway. The Department shall issue permits to law enforcement agencies that meet standards set by the Department.

3. A positive match by an automatic license plate reader system alone shall not constitute reasonable suspicion as grounds for a law enforcement officer to stop the vehicle. Prior to stopping a vehicle based on identification within the automatic license plate reader system database, the officer shall immediately visually confirm that the license plate on the vehicle matches the image of the license plate displayed on the automatic license plate reader system and that the stop meets criteria laid out in the law enforcement agency's policies.

Exhibit 7
Page 4 of 6

4. Records of license plates and vehicles recorded by an automatic license plate reader system shall be purged from the database or system within thirty (30) days of their capture in such a manner that they are destroyed and not recoverable, unless the record is a part of an ongoing investigation, in which case the data may be retained until final disposition of the matter in accordance with applicable records retention laws.

5. Captured license plate data obtained for the purposes identified in paragraph 1 of this subsection shall not be sold for commercial or marketing purposes.

C. A law enforcement agency that installs or uses any automatic license plate reader system, pursuant to this section, shall make the following information public:

1. A log of its use, to be updated on a monthly basis, displaying at least the aggregate number of vehicles on which data was collected for each month of use and a list of all state and federal databases with which the data were compared, unless the existence of the database itself is not public; and

2. The law enforcement agency's automatic license plate reader system policy.

SECTION 2. AMENDATORY 69 O.S. 2021, Section 1208, as amended by Section 1, Chapter 335, O.S.L. 2023 (69 O.S. Supp. 2023, Section 1208), is amended to read as follows:

Section 1208. ~~(a)~~ A. The rights-of-way acquired by the Department of Transportation or a county shall be held inviolate for state highway, departmental, or county purposes, and no physical or functional encroachments or uses shall be permitted within such rights-of-way.

~~(b)~~ B. It shall be unlawful for any person to construct, maintain or operate any gasoline pump, driveway canopy, building, sign, fence, post, or any thing or structure on or overhanging any right-of-way, or upon or overhanging any street occupied by a designated state or federal highway, or county roads and the construction or maintaining of any such thing or structure on or overhanging any federal or state highway or county roads shall constitute a public nuisance, which may be summarily abated by the Commission or board of county commissioners or its officers, agents, servants and employees in the manner provided in this article.

~~(c)~~ C. This section shall not apply to the lawful use of such rights-of-way for the erection and operation of facilities of a public utility, or companies engaged in the activities defined in Section 137.1 of Title 52 of the Oklahoma Statutes.

D. 1. As used in this subsection:

a. "automatic license plate reader system" means a system of one or more fixed or mobile cameras combined with computer algorithms to convert images of license plates and vehicles into computer-readable data, and

b. "highway rights-of-way" means the state and interstate highway systems maintained by the Oklahoma Department of Transportation.

2. In accordance with applicable state and federal laws governing the use and management of highway rights-of-way, and subject to the approval of the Federal Highway Administration as required by federal law, license plate reader systems operated by law enforcement agencies shall be allowed on highway rights-of-way for the purpose of aiding in criminal investigations or searches for missing or endangered persons to the extent that such use is consistent with the continued use, operations, maintenance, and safety of the highway facility and does not interfere with the free and safe flow of traffic.

SECTION 3. This act shall become effective November 1, 2024.

COMMITTEE REPORT BY: COMMITTEE ON PUBLIC SAFETY, dated 02/27/2024 - DO PASS, As Amended.